Goddard *et al. v.* Stockman, Treasurer, *et al.*

———————•••———————

No. 9371.

GODDARD ET AL. *v.* STOCKMAN, TREASURER, ET AL.

COUNTY COMMISSIONERS.—*Record.*—*Finding.*—*Petition for Appropriation to Railroad.*—*Election.*—*Interpolation of Record.*—The recital in the entry of a board of county commissioners, ordering an election in a township upon a petition therefor to vote aid for the construction of a railroad, "And proof being made that twenty-five of the petitioners are freeholders of Clinton township," is sufficient to show that such board found that the petition was signed by twenty-five freeholders of the particular township of their own county, and the mere fact that such recital was interpolated after the other parts of the entry had been completed does not affect the validity of the entry or the part interpolated.

SAME.—*Signing Record of Proceedings.*—*Unsigned Orders not void.*—While it is the better practice that the record of the proceedings of a board of county commissioners should be signed by the members thereof, yet unsigned orders of the board are not void, and, when properly signed within a reasonable time, become valid from the time when made.

SAME.—*Conditions to Appropriation.*—*Statute Construed.*—A petition asking for an appropriation to aid in the construction of a railroad is not invalid for the reason that it does not ask for the annexing of conditions to the appropriation. The act of March 8th, 1879, Acts 1879, p. 46, enables petitioners and voters to annex conditions to appropriations, but does not compel them to do so if they do not desire any conditions.

Goddard *et al* v. Stockman, Treasurer, *et al.*

SAME.—*Contesting Validity of Election.*—*Appeal from Order of Board.*—*Injunction.*—While the law for contesting elections is not applicable to elections held for the purpose of voting aid for the construction of a railroad, yet the board of county commissioners has the right to go behind the canvass of the vote and enquire into the truth of the return made by the canvassers; and any individual interested may appear before the board and contest the result of the election, and if aggrieved at their decision may appeal to the circuit court, and in this way the validity of the result of such election, as to the legality of the votes cast, may be contested, but not by a suit to enjoin the collection of the tax levied in pursuance thereof.

SAME.—*Levy of Less than one-half of Donation.*—*Appeal.*—If, in such case, the one per cent. levied for the current year amounted to less than one-half of the amount of the donation asked, the remedy therefor is by appeal from the order whereby the levy was made.

SAME.— *Granting Prayer of Petitioners.*— *Sufficiency of Order.*—The recital in the record of the order of the board of commissioners making such an appropriation, that "it is hereby ordered that a special tax of one per cent. * * be and the same is hereby levied, * * for the purpose of raising one-half of the amount specified in said petition," is a sufficient granting of the prayer of the petition.

SAME.—*Property Omitted from Taxation Does not render Tax on other Property invalid.*—If, in making the levy for such donation, certain taxable property of the township was omitted from the assessment, the tax upon all other property that has been assessed is not thereby rendered invalid.

PRACTICE.—*Pleading.*—*Demurrer.*—If an allegation of a pleading is one that the pleader can be heard to make, and it be well pleaded, then a demurrer admits it to be true, otherwise it does not.

From the Decatur Circuit Court.

*J. D. Miller* and *F. E. Gavin*, for appellants.

*W. A. Moore,* ——*Bennett, C. Ewing, J. K. Ewing, C. Baker, O. B. Hord* and *A. W. Hendricks*, for appellees.

WOODS, J.—The appellants, who were plaintiffs in the circuit court, sued as taxpayers of Clinton township, Decatur county, to enjoin the collection of a tax levied for the purpose of aiding the Vernon, Greensburg and Rushville Railroad Company, by subscribing, on the part of the township, to $11,000 of its capital stock.

VOL. 74.—26

A demurrer to the complaint was sustained by the circuit court, and final judgment was rendered upon it in favor of defendants.

The substance of the complaint is as follows : That plaintiffs were taxpayers of the township ; that on the 19th of July, 1879, a petition, purporting to be signed by twenty-five or more freeholders of the township, was filed in the county auditor's office, asking the county commissioners to make the appropriation ; a copy of the petition is set out ; that on the 21st of July it was presented to the commissioners, who ordered it spread upon the records, and thereupon made an order in the premises, which is set out in the complaint. It recited that proof was made that twenty-five of the petitioners were freeholders of the township. It directed the holding of an election on the 25th day of August, 1879, and that the auditor should give notice of the election.

The complaint states that that part of the order reciting that proof was made that twenty-five of the petitioners were freeholders of the township is an interpolation made subsequently, but does not state by whom made ; that the record entry of the order was not signed by the commissioners or any of them, nor attested by the auditor, until thirty days after the date it purports to have been signed ; that no proof was made that the petition had been signed by twenty-five freeholders, and that it had not, in fact, been so signed ; that the auditor gave notice of the election, a copy of which is set out ; the certificates of the sheriff as to posting and publishing the notice are set out ; that on the 25th day of August, 1879, a pretended election was had in Clinton and Washington townships, there having been a like petition from the latter township ; that the officers of election of the two townships met on the 28th of August, at the courthouse, as a pretended canvassing board, and canvassed the vote of Clinton township, and certified the result to the auditor—67 for and 66 against the appropriation ; their cer-

Goddard *et al. v.* Stockman, Treasurer, *et al.*

tificate is set out; that on June 10th, 1880, the commissioners, in regular session, ordered a levy of one per cent. on the taxables of Clinton township; the order is set out; that the tax has gone on the duplicate, and the treasurer is about to enforce collection; that the taxables of the township on the duplicate of 1878 amounted to $590,000, and for 1880 to $492,000 only.

The complaint then assigns twelve objections to the validity of the tax, mostly matters of law. One of them, however, the eighth, states as fact that ten persons who voted for the appropriation were not residents or legal voters of the township, so that upon the legitimate vote there was a majority of nine against the measure.

The first objection assigned is that the board had no right or authority to consider the petition nor to order the election or levy the tax.

The fourth objection is, that the board, prior to ordering the election, were not satisfied that the petition had been signed by twenty-five freeholders, and that the petition was not in fact so signed.

In appellants' brief these two objections are treated as raising the same point, and are considered together.

The order of the county board recites as follows: "And proof being made that twenty-five of the petitioners are freeholders of Clinton township."

It is said that this means nothing more than that some evidence to that point was introduced, but that it does not show that the board "was satisfied with the proof." It is also said that the recital does not show that the "Clinton township" referred to in the recital, was in Decatur county. When a tribunal having jurisdiction to decide as to the existence of a fact finds that it is *proved*, there would seem little room for doubt as to its being satisfied that the fact existed. When the commissioners of Decatur county, in considering a petition purporting to be signed by freehold-

ers "of Clinton township, in said county," find that the petitioners were freeholders of "Clinton township," there is little room to doubt that they referred to Clinton township in their own county.

But it is said that the recital referred to was an interpolation, made subsequently to the making of the other portions of the entry.

The complaint copies the order of the commissioners, and this recital appears as a part of it. It was placed there presumably by the auditor, with the sanction of the board—at least nothing to the contrary is alleged. The only complaint made is, that it was written after the other portion of the entry, and after the day upon which the order was made. It is not even charged that it was placed there fraudulently,. or by an unauthorized person.

The mere fact, that the words were interpolated after the other part of the entry had been completed, in no manner affects the validity of the entry, or of the interpolated part.. See *Larr* v. *The State, ex rel.*, 45 Ind. 364 ; *Anderson* v. *Mitchell*, 58 Ind. 592 ; *Blair* v. *Lanning*, 61 Ind. 499 ; *Jones* v. *Carnahan*, 63 Ind. 229 ; *Kent* v. *Fullenlove*, 38 Ind. 522.

No statute has been called to our attention or come under our observation, which requires that the proceedings of the board be signed by the members of the board, though it is doubtless the common usage, and the better practice, that the proceedings be so signed and authenticated. The auditor of the county is required to "attend the meetings of such commissioners, and keep a record of their proceedings," and "The commissioners of each county shall use a common seal ; and copies of their proceedings, when signed and sealed by the said auditor, shall be sufficient evidence thereof, on the trial of any cause in any of the courts of this State." 1 R. S. 1876, p. 351, secs. 7 and 10. But, conceding the propriety and necessity of the signatures of the commissioners, we are clear that unsigned orders of the board are not void, and

when properly signed, within any reasonable time, become valid from the time when made. See authorities cited *supra*.

The next objection is, "Because the petition presented to the board of commissioners of said county does not ask that Clinton township make the appropriation of $11,000, but that the commissioners make the same."

The petitioners represent themselves as freeholders of Clinton township. The petition represents that the road runs through that township, and asks that the "board make an appropriation of eleven thousand dollars for the purpose of aiding in the construction of said road, by taking stock in said company, for said Clinton township."

The next objection is founded on the fact that the petition did not ask for the annexing of any conditions to the appropriation.

This court had decided, in *The Indiana, etc., R. W. Co.* v. *The City of Attica*, 56 Ind. 476, that it was not competent for a city to annex conditions to a donation as a consideration for making it. This was at the May term, 1877. At the next session of the Legislature, the act of March 8th, 1879, Acts 1879, p. 46, was passed, the purpose of which was to permit townships to aid railroad companies, either by taking stock or donating money, by annexing such conditions "as to freight, rates, location of machine-shops, depots, and such other terms and conditions as may be specified in such petition," etc. The obvious purpose of this act simply was to enable the petitioners and voters to annex conditions to the appropriation, if they saw fit to do so, and not to compel them to do so if they did not desire any conditions.

The fifth objection is, that the election "was held within less than thirty days after the making *and signing* of the order directing the same."

This proceeds on the assumption, already discussed, that the order for holding an election is without efficacy and void, until entered and signed by the commissioners. If the stat-

ute provided that the day to be named for the election should' be not less than thirty nor more than sixty days from the making and signing of the order, the case would probably fall within the principle ruled in *Kent* v. *Fullenlove*, 38 Ind. 522. But that is not the provision. The statute directs that the board shall "order the polls * * to be opened, on a day to be named in the order, which shall not be less than thirty nor more than sixty days thereafter," etc. Acts 1869, p. 93.

The sixth objection is not essentially different from the fifth, and need not be further considered.

The seventh and eighth objections are based upon the allegation that, of the sixty-seven votes cast and counted in favor of the appropriation, ten were cast by persons who were not legal voters, and that, of the votes legally cast, there was, in fact, a majority against the appropriation.

It is said by counsel, that the demurrer admits this allegation to be true. But this takes for granted the question in dispute. If the allegation is one that the plaintiffs can be heard to make, and if it is well pleaded, then the demurrer admits it to be true. Otherwise it does not.

In this matter the county commissioners were performing a delegated governmental duty; for the maintenance of highways is one of the duties of government, and a railroad is recognized as a modern species of highway.

There is obvious necessity that the will of the people in the matter of aiding the construction of a railroad, as expressed at the polls, should in some way be authoritatively ascertained once for all. If left open to every taxpayer, in a suit brought at his own pleasure, to go behind the returns of the officers of election and the determination of the county board, a measure supposed to be of public importance can not be securely accomplished. At the suit of one citizen to enjoin the tax and "remove a cloud from his title," a jury might find one way, while another jury in another suit might find the other way. As was said in *Shideler* v. *Clinton*

*Township,* 23 Ind. 479, "In such a case, public safety required that the determination shall be conclusive."

For the purpose of definitely and finally ascertaining the result, the Legislature has provided that the machinery of a general election shall be employed. Secs. 4 to 11 of the railroad act, 1 R. S. 1876, p. 736. In this case there was not only an official return of the vote by the sworn officers of election, but the county board made a finding that the majority of the voters at the election were in favor of the appropriation.

Against these views the counsel for the appellant say : "It has, however, never been the duty of any court or tribunal to pass upon the legality of these votes. When the ten illegal voters offered to vote, all the board of judges could do was to require the oath and affidavit required by sec. 21, 1 R. S. 1876, p. 439, and then, by sec. 22, they must receive the vote. They acted in a ministerial and not in a judicial capacity. When the board of canvassers met and organized, all they could do was, as commanded by statute, sec. 10, 1 R. S. 1876, p. 738, to 'carefully compare and examine the papers, and shall prepare and sign a statement of the whole number of votes cast, and the number for such appropriation to the railroad company and the number against it.' No power to hear evidence or purge the polls is given them. The statute further provides (sec. 11) that this statement shall be filed with the auditor, and recorded, and by sec. 12, that, 'If a majority of the votes cast shall be in favor of such railroad appropriation, the board of county commissioners, at their ensuing regular June session, shall grant the prayer of said petition.' There is no provision made for any trial, any adversary proceedings or the hearing of any evidence, other than the statement filed by the board of canvassers with the auditor."

If convinced of the truth of these views, and that the appellants have never had any legal means of contesting the

election, or the return thereof made by the canvassers, we should feel compelled to sustain the appeal and to hold that a remedy could be had by injunction. But we entertain a different view of the law. The statute expressly gives to any person aggrieved by any decision of the board of county commissioners a right of appeal therefrom to the circuit court. This right is not confined to the formal parties to the procedure, but any one, not a party, may show his interest by affidavit and have the appeal. The law for contesting elections is not applicable to elections such as this was, but, nevertheless, there was a practicable way open for making an efficient contest. The law is not, that, if a majority of votes returned be in favor of the appropriation, the board shall grant the prayer of the petition, but, if a majority of the votes cast shall be in favor of such railroad appropriation, the county commissioners, at their regular ensuing June session, shall grant the petition. This means the legal votes cast, and the board has the right to go behind the canvass of the vote and inquire into the truth of the return made; and any individual interested may appear before them and contest the result of the election, and, if aggrieved at the decision of the board, take his appeal to the circuit court. See *Muncey* v. *Joest, post,* p. 409; *McKeever* v. *Ball,* 71 Ind. 398; *Houk* v. *Barthold,* 73 Ind. 21; *Brocaw* v. *The Board,* etc., 73 Ind. 543, and cases cited.

The ninth objection is to the effect that the one per cent. levied for the year 1880 amounted to less than one-half of the amount of the donation. The remedy for this wrong, if it was a wrong, was also by an appeal from the order whereby the levy was made.

The next objection rests on the fact that a similar election was held in another township where there were two precincts, and the judges of all three precincts united in canvassing and certifying the vote of each precinct. The

question thus presented has been already decided by this court. *Mustard* v. *Hoppess*, 69 Ind. 324.

The next objection to the levy is the alleged fact that the board never expressly granted the prayer of the petition for the appropriation. The board did, after making some recitals, say: "Wherefore it is hereby ordered that a special tax of one per cent. upon the real and personal property of said township be, and the same is hereby, levied for the year 1880, for the purpose of raising one-half of the amount specified in said petition." And we think this was a sufficient granting of the petition.

The last objection is, that $10,000 or over of the taxable property of the township was omitted from this assessment.

It is not shown why or how or by whose fault this property was not taxed, and the argument seems to be that, if through any cause any taxable property is overlooked, the tax upon all other property that has been assessed should be enjoined. We do not understand the law to be so. The assessment act provides for the taxation of all such omitted property. Such an omission bears no analogy to the case of a turnpike professing to assess all lands within a mile and a half of the line, but omitting portions of the land within that limit.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.